977 A.2d 346 (2009)
In re D.T., Appellant.
No. 06-FS-979.
District of Columbia Court of Appeals.
Argued May 13, 2009.
Decided July 30, 2009.
*347 Philip C. Andonian, Public Defender Service, with whom James Klein, Samia Fam, and Joshua Deahl, Public Defender Service, were on the brief, for appellant.
Stacy L. Anderson, Assistant Attorney General for the District of Columbia, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, Deputy Solicitor General, were on the brief, for appellee.
*348 Roy W. McLeese III, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, was on the brief, as amicus curiae.
Before BELSON, NEBEKER, and TERRY, Senior Judges.
NEBEKER, Senior Judge:
In this appeal from appellant's adjudication of delinquency for assaulting a police officer with a deadly or dangerous weapon, D.C.Code § 22-405(b), we are presented with the question whether human teeth qualify as such a weapon. We hold that, under the circumstances revealed on this record, the teeth appellant used to bite the officer constituted a deadly or dangerous weapon, that is, an object likely to cause death or great bodily injury in the manner of its use, threatened use, or attempted use. Accordingly, the judgment of the trial court is affirmed.

I.
The petition of delinquency the District of Columbia filed charging appellant D.T. with assaulting a police officer with a deadly or dangerous weapon arose from the events of September 23, 2005, which are largely undisputed on appeal. Officers Anthony Covington and Todd Korson were on patrol in uniform in Southeast Washington, D.C., that day when, at around 3:00 p.m., they received a call that shots had been fired in the vicinity of the D.C. Alternative Learning Academy located at the 4200 block of Ninth Street in Southeast. The lookout was for a black male wearing blue jeans, a black hat, black boots and a black t-shirt. As the officers approached the 4200 block, Officer Covington spotted an individual matching that description and who looked like he had been running. Officer Korson approached that individual, appellant in this matter, and attempted to stop him in order to lead him away from the area. Appellant resisted by jerking his arm away from the officer, and assumed a defensive posture. Appellant's behavior increased the officers' suspicions that he was the suspect with the gun. The officers then attempted to subdue appellant by grabbing his arms. A struggle ensued, with appellant kicking and swinging at the officers, during the course of which all three of them fell to the ground. While the officers were attempting to pin appellant to the ground, appellant continued to resist, striking and spitting on them. While Officer Covington was kneeling down on the ground in a continuing attempt to subdue appellant, appellant lunged forward and bit Officer Covington in his upper, inner right thigh.
The officers thereafter gained control of appellant and handcuffed him. While being led away, appellant threatened the officers and their families. Officer Covington then inspected the bite wound, and noticed that appellant had bitten through his pants and punctured the skin. Officer Covington was bleeding from the wound and bite marks were visible. He was taken to the Police and Fire Clinic by squad car, where the wound was cleaned, blood was drawn, he received a tetanus shot and was started on anti-hepatitis and HIV medication. The wound required no stitches, and he did not receive treatment at any other facility. Officer Covington was placed on leave for five to six days and received a six and one-half month course of prophylactic anti-viral treatment. The prosecution presented no evidence that appellant was infected with HIV, hepatitis or any other communicable disease.
On September 24, 2005, appellant was charged with one count of assaulting a police officer, D.C.Code § 22-405(a), and one count of assaulting a police officer using a deadly or dangerous weapon, *349 D.C.Code § 22-405(b) (2001). At the close of the government's evidence, appellant moved for a judgment of acquittal as to the charge of assaulting an officer using a deadly or dangerous weapon "because teeth are not a `dangerous weapon.'" Appellant argued, inter alia, that teeth are not a deadly or dangerous weapon because "[t]eeth are not among the most lethal of civilian weaponry nor are they instrumentalities separate and distinct from the human body." Appellant also argued that the bite appellant inflicted was not likely to cause death or great bodily injury. Noting that the evidence showed that appellant "was not using teeth for any reason other than to injure the officer," the trial court denied appellant's motion. The court further found that the prosecution had proved both assaults, including that appellant had assaulted Officer Covington with a deadly or dangerous weapon, his teeth. The trial court sentenced appellant to commitment in the Department of Youth Rehabilitation Services for an indeterminate period not to extend beyond his twenty-first birthday.
In this appeal, appellant challenges only his adjudication of delinquency for assaulting a police officer with a deadly or dangerous weapon. He contends that the judgment should be reversed because: (i) teeth, as a matter of law, cannot be a dangerous weapon under D.C.Code § 22-405(b), and (ii) even if teeth can be a dangerous weapon, appellant's teeth did not function as such in this case.

II.

a.
The question of whether the legislature has included human teeth within the scope of "deadly or dangerous weapon" is a question of law this court reviews de novo. District of Columbia v. Economides, 968 A.2d 1032, 1035 (D.C.2009).
The criminal statutes of the District of Columbia enumerate two categories of dangerous weapons: (i) items that are dangerous per se, and (ii) items that are not inherently dangerous, but may become so under the circumstances. Dorsey v. United States, 902 A.2d 107, 111 (D.C. 2006); Reed v. United States, 584 A.2d 585, 588 (D.C.1990) ("While certain objects are weapons by design, for instance, a handgun or a switchblade, other objects become weapons only when there is some general intent for them to be a weapon."). A weapon is dangerous per se where the item, "when used in the manner that [it was] designed to be used," is "so clearly dangerous" that it merits such designation as a matter of law. Williamson v. United States, 445 A.2d 975, 979 (D.C.1982) (citing as examples rifles, swords and daggers). As to the second categoryitems that not inherently dangeroussuch objects may become dangerous weapons if they are "`likely to produce death or great bodily injury' in the manner [they are] used, intended to be used, or threatened to be used." Id. (citation omitted); see Reed, supra, 584 A.2d at 588-89 ("[I]f an individual carries a bat to the baseball field for a game, the bat is certainly not a weapon. However, if the individual should swing the bat purposely at another, that bat then becomes a weapon.").
"Whether an object or material which is not specifically designed as a dangerous weapon is a `dangerous weapon' under an aggravated assault statute ... is ordinarily a question of fact to be determined by all of the circumstances surrounding the assault." Williamson, supra, 445 A.2d at 979. We have repeatedly emphasized that the "proper approach for determining what is a `dangerous or deadly weapon' is a functional one," Mitchell v. United States, 399 A.2d 866, 870 (D.C. *350 1979); see Edwards v. United States, 583 A.2d 661, 664 (D.C.1990), and that "any object which is `likely to produce death or great bodily injury by the use made of it' is a dangerous weapon." Arthur v. United States, 602 A.2d 174, 177 (D.C.1992) (first emphasis supplied) (quoting Scott v. United States, 243 A.2d 54, 56 (D.C.1968)); see Thomas v. United States, 602 A.2d 647, 651 (D.C.1992); see also Criminal Jury Instructions for the District of Columbia (4th ed. rev.2002) (Inst. 4.07 defines weapon for crime of assault with a dangerous weapon as "anything designed to be used or actually used to attack or threaten another person," and Inst. 4.70 defines weapon for the crime of carrying a deadly or dangerous weapon as "any object likely produce death or great bodily injury"). Accordingly, this court has said that a variety of items, innocuous enough in themselves, may constitute dangerous weapons when so used. See, e.g., Powell v. United States, 485 A.2d 596, 601 (D.C. 1984) (automobile); Jones v. United States, 401 A.2d 473, 476 (D.C.1979) (furniture leg); United States v. Brooks, 330 A.2d 245, 246-47 (D.C.1974) (wooden table leg).
While we have said that "any object" may constitute a dangerous weapon under an aggravated assault statute when used in a manner likely to cause great bodily harm, and that an object's dangerousness is ordinarily a question for the jury, we have also made clear that the legislature has categorically excluded certain objects and instrumentalities from the scope of the term "dangerous weapon." For example, in Edwards, supra, 583 A.2d 661, we held that stationary bathroom fixtures were not dangerous weapons for purposes of sentence enhancement under D.C.Code § 22-3202 (1989) (re-codified as D.C.Code § 22-4502 (2001)). Id. at 663, 667-68 (noting that a "defendant may not be subjected to a criminal penalty unless the words of the statute plainly impose it," and that the stationary bathroom fixtures were not dangerous weapons under the statute unless the legislature had treated them as such) (quoting United States v. Campos-Serrano, 404 U.S. 293, 297, 92 S.Ct. 471, 30 L.Ed.2d 457 (1971)). In Edwards, we considered whether the stationary bathroom fixtures were dangerous weapons by considering the plain meaning of the statute, other uses of the term in related legislation, case law and by applying secondary canons of statutory construction. We now examine the meaning of "deadly or dangerous weapon" in D.C.Code § 22-405(b) in light of the same considerations to determine whether the statute's use of the term comprehends human teeth. We hold that it does.
When interpreting a statute, this court first looks to the plain meaning of the statutory language. Boyle v. Giral, 820 A.2d 561, 568 (D.C.2003). We must determine whether the term "weapon," understood "in accordance with its ordinary and usual sense, and `with the meaning commonly attributed to it,'" readily comprehends human teeth. United States v. Thompson, 347 A.2d 581, 583 (D.C.1975) (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). It quite clearly does. In this jurisdiction, the term "weapon" includes "any instrument of offense; anything used, or designed to be used, in attacking an enemy." Tatum v. United States, 71 App. D.C. 393, 393, 110 F.2d 555, 555 (1940) (internal quotation marks omitted); see Reed, supra, 584 A.2d at 589 (applying Tatum's definition of weapon). Human teeth are effective weapons capable of inflicting deep, painful, and dangerous wounds. See United States v. Moore, 846 F.2d 1163, 1165-67 (8th Cir.1988) (noting that possibility of "serious infection" from *351 a human bite is a form of "serious bodily harm"); United States v. Studnicka, 450 F.Supp.2d 680, 681 (E.D.Tex.2006) ("[A]nyone minimally familiar with self-defense techniques knows that a bite can cause serious injury, if not death."); Thomas v. State, 656 N.E.2d 819, 821 (Ind. Ct.App.1995) (defendant, convicted of aggravated battery, bit wife on the eye with the result that eye was "not ... salvageable" and was removed); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993) (defining weapon as "an instrument of offensive or defensive combat: something to fight with ..." or "an animal's claw, teeth, talon, spur, or beak used as a means of attack ...." and tooth as "one of the hard bony appendages that are borne on the jaws ... and serve esp. for the prehension and mastication of food and as weapons of offense and defense"); LTC REX APPLEGATE, USA (RET), FMFRP 12-80, KILL OR GET KILLED 29 (1976) (manual of combat tactics used by United States Marines, which provides that "teeth, in spite of any mental qualms as to their use, are very effective weapons. The jaw muscles can exert terrific pressure and a deep bite to almost any tender or exposed area will effect a release or cause an opponent to cease offensive action."). Teeth, therefore, fit comfortably within the plain meaning of "weapon." This conclusion strongly supports the view that human teeth, like a chair leg or automobile, constitute an instrumentality whose dangerousness in a particular case is for the jury to gauge. Downs v. District of Columbia Police & Firefighters Ret. & Relief Bd., 666 A.2d 860, 861 (D.C.1995) ("The court favors interpretations consistent with the plain language of a statute.").
As we held in Edwards, however, that an object has the ability to inflict serious bodily harm, and has been used to that end in a particular instance, does not, ipso facto, make it a dangerous weapon. Edwards, supra, 583 A.2d at 668. Accordingly, we must expand our inquiry to assure ourselves that the legislature has indeed included human teeth as among the items a jury may find to be a dangerous weapon. District of Columbia v. Cato Inst., 829 A.2d 237, 240 (D.C.2003) ("[I]n certain circumstances it is appropriate to look beyond even the plain and unambiguous language of a statute to understand the legislative intent.").
Appellant points to several factors he believes demonstrate that the legislature intended to exclude body parts, including human teeth, from being deadly or dangerous weapons under D.C.Code § 22-405(b). First, appellant contends that our decision in Edwards affixed an interpretation to "dangerous weapon" that compels this court to exclude human teeth from the meaning of the term. Next, appellant argues that consideration of related statutory provisions makes clear that the legislature did not intend that body parts be treated as dangerous weapons, and that a contrary approach would "wreak havoc on the numerous statutory provisions that delineate weapons offenses." Finally, appellant urges that secondary canons of statutory construction support his position. None of appellant's positions is persuasive.
Summarizing our decision in Edwards, appellant argues that we held in that case that a dangerous weapon is an "portable, external" object or instrumentality an assailant may possess or with which he may arm himself. Citing Edwards, as well as this jurisdiction's "shod foot" cases, appellant contends that human teeth cannot be dangerous weapons because they are not external, cannot be possessed and are not something with which a person may be "armed." See Arthur, supra, 602 A.2d at 178-79 (holding that a "shod" foot may be *352 a dangerous weapon); Edwards, supra, 583 A.2d at 668. We disagree.
Appellant misconstrues our ruling in Edwards. The holding in Edwards that stationary bathroom fixtures are not dangerous weapons simply does not support appellant's contention that human teeth cannot be a dangerous weapon. Nowhere in the opinion did we suggest that a dangerous weapon must be external. Human teeth are not fixed and stationary. And we see nothing inconsistent about the idea of "possessing" teeth.[1]
Nor, contrary to appellant's contention, are our "shod foot" cases (in which we held that a "shod" foot could be a dangerous weapon) "impliedly premised" on the idea that body parts could not qualify as dangerous weapons. See, e.g., Anderson v. United States, 857 A.2d 451, 464-65 (D.C. 2004); Arthur, supra, 602 A.2d at 177. We no more implied that bare feet were not dangerous weapons in our shod foot cases by highlighting the presence of the shoe, than we intimated that a cold clothes iron could not be a dangerous weapon when we held that a "hot" one was. See Johnson v. United States, 613 A.2d 888, 897-99 (D.C.1992) (upholding against challenge for evidentiary insufficiency appellant's conviction for rape while armed with a hot clothes iron). We decide the cases before us, not hypothetical questions the facts of a particular case do not present. Alpert v. Wolf, 73 A.2d 525, 528 (D.C.1950) ("`[T]he duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'") (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)).
Appellant next argues that the use of the term "dangerous weapon" in other parts of the District's Criminal Code shows that the legislature did not intend that body parts be considered dangerous weapons, and that holding teeth to be a dangerous weapon under D.C.Code § 22-405(b) would disrupt the statutory scheme. Appellant points to other statutory provisions, including D.C.Code §§ 22-4502(a) and -4514(b), which list examples of dangerous weapons such as a dagger, stiletto, razor, pistol, shotgun, bowie knife, switch-blade *353 knife, etc.[2] Noting that this court has attempted to give uniform meaning to the phrase "dangerous weapon," he argues that D.C.Code §§ 22-4502(a) and -4514(b) enumerate the type of objects that constitute dangerous weapons under D.C.Code § 22-405(b). See, e.g., Arthur, supra, 602 A.2d at 177. Appellant also suggests that holding human teeth can be a dangerous weapon would create liability for possessing a prohibited weapon, human teeth, D.C.Code § 22-4514(b), increase liability for burglary to burglary while armed if the burglar were, for example, to bare his teeth during the crime, and would transform every simple assault against a police officer into an assault with a dangerous weapon. Appellant's arguments are misplaced.
Appellant correctly points out that other statutory sections list items, such as daggers, switchblades, etc., that give context to the meaning of the phrase "dangerous weapon" contained therein. See D.C.Code §§ 22-4502(a), -4514(b). The provision at issue in this case, D.C.Code § 22-405(b), contains no such listing. Nevertheless, D.C.Code §§ 22-4502(a) and -4514(b) not only present a non-exhaustive list of weapons readily classifiable as dangerous per se, but their enumeration of portable, hand-held items bears little relationship to objects we have held may be dangerous weapons, such as automobiles.[3]See Frye v. United States, 926 A.2d 1085, 1096-97 (D.C.2005) (appellant committed attempted aggravated assault while armed and assault with a dangerous weapon using a van); Powell, supra, 485 A.2d at 601 (automobile); see also Arthur, supra, 602 A.2d at 177 (tennis shoes); Tatum, supra, 110 F.2d at 555(lye). Since human teeth may indisputably be "use[d]" as a weapon to inflict serious bodily harm, we do not regard a list of examples of inherently dangerous weapons in a separate statutory provision as evidence that the legislature intended to exclude teeth as a dangerous weapon under D.C.Code *354 § 22-405(b).[4] The failure to itemize human teeth in the statute is not an ambiguity "in the statute," but rather a recognition that infinite varieties of matter exist which, if included, would render the statute prolix.
Nor will our decision create "absurdities" in the enforcement of other criminal prohibitions. Just as a burglar is not guilty of burglary "while armed" merely because he enters the dwelling with shod feet, neither does the burglar commit the crime "while armed" because she possesses teeth during the break-in. In cases where the item in questionbe it an automobile, a chair leg, or human teethis not inherently dangerous, "while armed" liability attaches where the offender is "armed with" the object or has it "readily available" and where the object is likely under the circumstances to produce death or great bodily injury in the manner in which it is used, intended to be used, or threatened to be used. D.C.Code § 22-4502; Williamson, supra, 445 A.2d at 979; see Jamison v. United States, 670 A.2d 373, 374 (D.C.1996) (while armed liability requires merely that dangerous weapon be readily available, not actually used). Simply possessing teeth in no way meets that critical threshold. Thus, it is not correct that each of us carries a dangerous weapon at all times-be it shoes, a belt, or human teeth. It remains true, however, that we may convert these items into dangerous weapons by the use (actual, threatened or intended) we make of them. Williamson, supra, 445 A.2d at 979; Clarke v. United States, 256 A.2d 782, 786 (D.C.1969) ("An object which is not inherently dangerous can become dangerous by its use as a weapon."). Nor will every simple assault now be chargeable as an assault with a dangerous weapon. When an assailant commits an assault using his teeth, the question for the jury will remain whether the teeth were likely to cause death or great bodily injury in the manner in which he or she used them, threatened to use them or intended to use themhardly a foregone conclusion in every case.[5]
*355 We also consider whether, as appellant proposes, secondary maxims of statutory interpretation, the rule of lenity in particular, counsel in favor of excluding teeth from the meaning of dangerous weapon in D.C.Code § 22-405(b). The rule of lenity "teaches that `criminal statutes should be strictly construed and that ambiguities should be resolved in favor of the defendant.'" Nkop v. United States, 945 A.2d 617, 621 n. 5 (D.C.2008) (quoting Cullen v. United States, 886 A.2d 870, 874 (D.C.2005)). The rule is properly invoked only in cases where "a penal statute's language, structure, purpose and legislative history leaves its meaning genuinely in doubt." Holloway v. United States, 951 A.2d 59, 65 (D.C.2008) (quoting United States Parole Comm'n v. Noble, 693 A.2d 1084, 1104 (D.C.1997)). The Edwards court applied the rule of lenity. Edwards, supra, 583 A.2d at 663. But it confronted the difficult issue of whether a fixed, stationary object could be a dangerous weapon; not the more straightforward question of whether human teeth, whose secondary purpose is use as a weapon and which fit readily into a common sense definition of "dangerous weapon," may serve as such under a separate statutory provision. The rule of lenity has no application in the present case as there is no ambiguity. See supra pp. 353-55.
We hold, in summary, that human teeth may, as a matter of law, be a "deadly or dangerous weapon" under D.C.Code § 22-405(b). We reach that conclusion having determined that human teeth fit comfortably under the plain meaning of the term dangerous weapon, and after considering our case law,[6] and the District's criminal statutory scheme as a whole.[7]

b.
Having determined that whether appellant assaulted Officer Covington using a "deadly or dangerous weapon" was properly a question for the trier of fact, we now *356 consider whether the evidence was sufficient to sustain the trial court's conclusion that appellant used his teeth in a manner "likely to produce death or great bodily injury." Alfaro, supra, 859 A.2d at 161. We conclude that it was.
"When this court considers a claim of evidentiary insufficiency, it must view the evidence in the light most favorable to the government...." In re E.H., 967 A.2d 1270, 1273 (D.C.2009) (quoting Freeman v. United States, 912 A.2d 1213, 1218-19 (D.C.2006)). "In a bench trial, this court `will not reverse unless an appellant has established that the trial court's factual findings are plainly wrong or without evidence to support them.'" Bacchus v. United States, 970 A.2d 269, 277 (D.C. 2009) (quoting Peery v. United States, 849 A.2d 999, 1001 (D.C.2004)). "`[I]t is only where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt that this court can reverse a conviction.'" Freeman, supra, 912 A.2d at 1219 (quoting Zanders v. United States, 678 A.2d 556, 563 (D.C.1996)).
This court has interpreted the term "great bodily injury" to be equivalent to the term "serious bodily injury," which describes "bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protected and obvious disfigurement, or protected loss or impairment of the function of a bodily member, organ, or mental facility." Alfaro, supra, 859 A.2d at 161-62. Although we have said that "[t]he best evidence of an object's dangerous character ... is the injury actually inflicted by it," the question before the trier of fact was whether appellant's teeth were "likely" to cause great bodily injury in the manner used, whether or not such injury resulted. Arthur, supra, 602 A.2d at 178.
In Rivera v. United States, 941 A.2d 434 (D.C.2008), we held that the government presented sufficient evidence to convict appellant of assaulting a police officer with a dangerous weapon, a belt, where appellant hit the officer with the belt several times causing bruising and a welt on the officer's upper arm. Id. at 441. In Dorsey, supra, 902 A.2d 107, we held that appellant used a belt in a manner likely to cause great bodily injury where he wielded it to strike a child in the face and on the leg. Id. at 109-12. In other contexts, we have concluded that a victim's injuries have not amounted to great bodily harm sufficient for a reasonable juror to conclude that the object that inflicted those injuries was a dangerous weapon. See, e.g., Stroman v. United States, 878 A.2d 1241, 1244-46 (D.C.2005) (cut to forehead from a flip-flop requiring fifteen stitches did not fall within the definition of great bodily injury).
Here, appellant was on the ground struggling with Officer Covington as the latter was attempting to subdue him. Violently resisting the officers, appellant lashed out with the one weapon that was available to him, his teeth. Lunging forward toward whatever part of Officer Covington's body was within his reachhis upper thigh and groinappellant bit through his pants and tore into Officer Covington's skin, leaving teeth marks and a bleeding wound. Officer Covington's treatment included a six-month course of anti-viral drugs. The injury was no less serious than the one the police officer suffered in Rivera, and occurred around a more dangerous location, the groin. Officer Covington did not actually suffer great bodily injury from the bite. But aware of the dangerousness of teeth as a weapon, and viewing the evidence in the light most favorable to the government, we cannot say that no rational trier of fact could *357 conclude that appellant used his teeth in a manner likely to cause great bodily harm.

III.
Because there was sufficient evidence to support the finding that appellant assaulted a police officer using a deadly or dangerous weapon, his teeth, the judgment of the trial court is affirmed.
So ordered.
NOTES
[1] Appellant apparently seizes on our statement in Edwards that the bathroom fixtures were "not something which Edwards could possess or with which he could arm himself as he went looking for his victim." Edwards, supra, 583 A.2d at 665. But this language is not binding on this court, for several reasons. First, the Edwards court weighed this point, along with others, in reaching its holding. But the panel did not adopt it as a rule of law as part of its "decision." See id. at 664 (noting that "we cannot say that the notion that a weapon is something which the defendant must be able to `possess' is necessarily dispositive."). Accordingly, it does not bind this court under M.A.P. v. Ryan, 285 A.2d 310, 312 (D.C. 1971). Second, the statute at issue in Edwards enhanced punishment for those who commit a crime of violence not only "when armed with" a dangerous weapon, but also where they have it "readily available." D.C.Code § 22-3202 (1989) (re-codified at D.C.Code § 22-4502). The statement speaks to only one of two means of violating the statute, not both. Accordingly, the sentence does not purport to explain the full scope of an offender's potential liability under then D.C.Code § 22-3202. In any event, we see nothing contradictory about the idea of possessing or arming oneself with one's teeth, particularly since appellant did precisely that as he lunged towards Officer Covington and bit him. Moreover, as we stated in Edwards, a "dangerous weapon need not be a hand-held item ... which could readily be used in combat." Edwards, supra, 583 A.2d at 665 (citing Tatum, supra, 110 F.2d at 555).
[2] D.C.Code § 22-4502(a) provides for an enhanced penalty for: "Any person who commits a crime of violence, or a dangerous crime in the District of Columbia when armed with or having readily available any pistol or other firearm (or imitation thereof) or other dangerous or deadly weapon (including a sawed-off shotgun, shotgun, machine gun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, or metallic or other false knuckles.)" D.C.Code § 22-4514(b) provides: "No person shall within the District of Columbia possess, with intent to use unlawfully against another, an imitation pistol, or a dagger, dirk, razor, stiletto, or knife with a blade longer than 3 inches, or other dangerous weapon."
[3] It is true that in Edwards this court applied the maxim of statutory construction ejusdem generis (the principle that where general words follow specific words in a statute, the general words are construed to embrace objects similar in nature to those enumerated by the preceding specific words) to infer that the meaning of the phrase "dangerous weapon" in the context of the list of weapons (daggers, stilettos, etc.) did not include stationary bathroom fixtures. Edwards, supra, 583 A.2d at 663-64. We recognized in that case, however, that ejusdem generis is "only a constructionary crutch and not a judicial ukase in the ascertainment of legislative intent." Id. at 664 (quoting State v. Small, 99 N.H. 349, 111 A.2d 201, 202 (1955)). As noted above, the analytical approach applied in Edwards is not part of the decision binding on this division under M.A.P., supra, 285 A.2d at 312. In any event, as we observe below, we find no need to resort to secondary maxims of statutory interpretation in this case where we perceive no "genuine ambiguity" as to whether human teeth may be a dangerous weapon under D.C.Code § 22-405(b). See District of Columbia v. Morrissey, 668 A.2d 792, 800 n. 13 (D.C. 1995); United States v. Espy, 330 U.S.App. D.C. 299, 301, 145 F.3d 1369, 1371 (1998) ("But before either ejusdem generis or the avoidance canon applies, there must be ambiguity in the statute....").
[4] Although we have attempted to define the criminal code's uses of the term "dangerous weapon" consistently, see Harper v. United States, 811 A.2d 808, 810 n. 1 (D.C.2002); Arthur, supra, 602 A.2d at 177, we cannot ignore the fact that the same object may be a dangerous weapon under one provision but not under another. For example, an automobile may be a dangerous weapon under one statute that penalizes having a dangerous weapon "readily available," but not under another that penalizes "carrying" a dangerous weapon. Compare Powell, supra, 485 A.2d at 601 (conviction upheld for second-degree murder while armed (D.C.Code § 22-3202 (recodified at D.C.Code § 22-4502)) and assault with a dangerous weapon (§ 22-502 (recodified at D.C.Code § 22-402)) automobile), with D.C.Code § 22-4504 (penalizing the carrying of, inter alia, "any deadly or dangerous weapon capable of being ... concealed"). The automobile is no less a dangerous weapon under D.C.Code § 22-4502 simply because it cannot be so under D.C.Code § 22-4504. We note, therefore, that the statute at issue in Edwards provides for sentence enhancement where an individual commits a crime of violence "when armed with or having readily available" a dangerous weapon. D.C.Code § 22-4502. By contrast, D.C.Code § 22-405(b) requires merely that an individual commit the crime enumerated in subsection (a) by "use[]" of a dangerous weapon. Comparison of the various contexts in which the term "dangerous weapon" appears in the statutory scheme bolsters, rather than undercuts, our conclusion that human teeth may be a dangerous weapon that an assailant may "use" within the meaning of D.C.Code § 22-405(b).
[5] We also do not find compelling appellant's argument that the legislature did not intend teeth to be a dangerous weapon, as it would render meaningless the distinction between aggravated assault and aggravated assault while armed, because every attack with human teeth causing serious bodily injury necessarily involves using them in a manner likely to cause such harm. The criminal laws of the District of Columbia are not free from superfluity in every respect. The criminal code, for example, provides liability for assault with a dangerous weapon while armed, a redundant enhancement we have found inapplicable in that context. D.C.Code §§ 22-402, -4502(a); McCall v. United States, 449 A.2d 1095, 1096 (D.C.1982); see Gathy v. United States, 754 A.2d 912, 916 n. 5 (D.C.2000) (addressing McCall). Similarly, the District's criminal code also prescribes "while armed" enhancement for possession of a weapon of mass destruction, a crime one presumably cannot accomplish without already being armed with a dangerous weapon. D.C.Code §§ 22-3154, -4501, -1331 (2007).
[6] We note in passing that our predecessor court affirmed a conviction for assault with a deadly weapon where the assailant bit his victim with his teeth. Parman v. United States, 130 U.S.App. D.C. 188, 399 F.2d 559 (1968); see United States v. Parman, 149 U.S.App. D.C. 117, 118, 461 F.2d 1203, 1204 (1971). Appellant did not challenge the sufficiency of the evidence relating to his assault conviction, however.
[7] Although the aforementioned authorities have shaped our decision exclusively, we note that other jurisdictions have endorsed our approach, if not uniformly. Compare United States v. Sturgis, 48 F.3d 784, 788 (4th Cir. 1995) (Fourth Circuit, interpreting precise provision at issue in this case, concludes that "teeth may also be a dangerous weapon if they are employed as such"), People v. Ross, 831 P.2d 1310, 1313-14 & n. 6 (Colo.1992) (en banc) (finding that fists may be a dangerous weapon and noting that "assertion that a majority of jurisdictions do not recognize body parts as deadly weapons," drawing on cases from the 1940s and 1950s, "has been contradicted by the weight of more recent authority."), and State v. Neatherlin, 154 P.3d 703, 707-11 (N.M.Ct.App.2007), with Commonwealth v. Davis, 10 Mass.App.Ct. 190, 406 N.E.2d 417 (Mass.1980) (teeth not dangerous weapons), People v. Malkowski, 198 Mich.App. 610, 499 N.W.2d 450 (1993) (same), overruled in part on other grounds, People v. Edgett, 220 Mich.App. 686, 560 N.W.2d 360 (1996), and People v. Owusu, 93 N.Y.2d 398, 690 N.Y.S.2d 863, 712 N.E.2d 1228 (N.Y.1999) (same).