Elaine JONES, Appellant,

v.

UNITED STATES, Appellee.

No. 12–CM–247.

District of Columbia Court of Appeals.

Submitted Jan. 8, 2013.

Decided June 6, 2013.

Matthew C. Leefer, Boonsboro, was on the brief for appellant.

Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, Michelle Parikh Brown, and Harry B. Ro-back, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER and OBERLY, Associate Judges, and STEADMAN, Senior Judge.

FISHER, Associate Judge:

Appellant Elaine Jones challenges the sufficiency of the evidence to support her convictions for second-degree cruelty to children and attempted possession of a prohibited weapon—pepper spray (attempted PPW (b)). We affirm the judgment for cruelty, but reverse as to attempted PPW (b) because the government's evidence was insufficient to prove that pepper spray was an "other dangerous weapon."

## I. Background

On May 7, 2011, appellant and Cerice Allen had an argument over a two-year-old child—Ms. Allen's daughter and appellant's granddaughter. When Ms. Allen, who was not entitled to custody of her daughter, attempted to take the child onto a bus with her, appellant tried to stop Ms. Allen by pulling her hair. A struggle ensued, and one bystander, Kameron Smith, saw appellant repeatedly punch Ms. Allen, who did not return the blows even after appellant had knocked both Ms. Allen and the child to the ground.

Another bystander picked up the child, who Ms. Smith noted had a large raised bump on her head and "was crying, saying [']my head, my head.[']" Ms. Smith then shielded the bystander and child from the approaching women, asserting that she would not allow either of them to take the child. The women continued to fight, Ms. Allen finally returning a blow, and both women fell to the ground. While Ms. Allen remained on the ground, appellant discharged pepper spray into Ms. Allen's

face, causing her to cry out, "my eyes, my eyes."

Shortly thereafter, Metropolitan Police Officer Stephen Bigelow arrived and arrested appellant. Appellant was charged by information with assault, D.C.Code § 22–404 (2001), attempted possession of a prohibited weapon (APPW (b)), D.C.Code §§ 22–4514(b), –1803 (2001), and second-degree cruelty to children, D.C.Code § 22–1101(b) (2001).

On December 20, 2011, Ms. Smith, Officer Bigelow, and appellant testified at a non-jury trial before the Honorable Judith E. Retchin. The victim, Ms. Allen, did not testify. Appellant admitted that she had sprayed Ms. Allen with pepper spray. However, she testified that she did so in an attempt to protect her granddaughter from harm, noting that Ms. Allen was not allowed unsupervised visitation with her daughter due to problems with drug abuse.

Appellant was convicted of all charges and sentenced to time served. Judge Retchin "wholly disbeliev[ed]" appellant's testimony, and instead credited Ms. Smith, whom she described as "an unbiased witness who was not impeached and this Good Samaritan appears to have witnessed this incident from the beginning to the end." In response to appellant's claim that her actions were motivated by a desire to protect the child, Judge Retchin stated:

> When the complainant was holding the child and she was striking the complainant numerous times, I don't believe she was concerned about the welfare of the child. If she had been concerned about the welfare of the child, she would not have acted as recklessly as she did in assaulting the person who was holding the child, and the child ended up falling to the ground. . . .

Regarding appellant's use of pepper spray, the court found:

> [T]he fact that the complainant was on the ground and the defendant then used the pepper spray, in my mind that was excessive. So even if the complainant was the aggressor after that break [in the fighting], the defendant's use of the pepper spray was not allowed as a matter of law where the complainant was on the ground, and the eyewitness said the defendant had more power and the defendant was getting the better of her. I don't think she was allowed to pull out the pepper spray as a matter of law. So although one may have a weapon for self-defense, I think there was not permissible self-defense when she used the pepper spray.

## II. Analysis

Appellant challenges the sufficiency of her convictions for second-degree cruelty to children and attempted PPW (b). She does not contest her conviction for assault. We affirm as to second-degree cruelty but reverse as to attempted PPW (b).

In reviewing a conviction for sufficiency of the evidence, we consider all the evidence in the light most favorable to the government, according deference to the fact-finder "to weigh the evidence, determine the credibility of the witnesses, and draw all justifiable inferences of fact. . . ." *(Devenn) Smith v. United States*, 899 A.2d 119, 121 (D.C.2006). "[I]n reviewing bench trials, this court will not reverse unless an appellant has established that the trial court's factual findings are 'plainly wrong,' or 'without evidence to support [them].'" *Mihas v. United States*, 618 A.2d 197, 200 (D.C.1992) (quoting D.C.Code § 17–305(a) (2001)) (second alteration in original).

### A. Cruelty to Children

Second-degree cruelty to children requires proof that appellant "intentionally, knowingly, or recklessly ... [m]al-

treat[ed] a child or engage[d] in conduct which cause[d] a grave risk of bodily injury to a child[.]" D.C.Code § 22–1101(b) (2001). Appellant claims she is not guilty of this offense because her actions were motivated by a desire to protect her granddaughter. However, a showing of intent to harm the child is not required. *See (Gerald) Smith v. United States*, 813 A.2d 216, 220 (D.C.2002) (in context of attempted second-degree cruelty to children, sufficient showing of *mens rea* where "the trial court found that appellant recklessly engaged in activity which caused a grave risk of injury to [the child] when he tossed her in the air while he was both intoxicated and in a heated argument"); *see also Mitchell v. United States*, 64 A.3d 154, 156–57 (D.C.2013) (sufficient evidence of second-degree cruelty to children where loaded firearms were found under cushion on couch); *Coffin v. United States*, 917 A.2d 1089, 1090 (D.C.2007) ("conduct of erratically operating a motor vehicle, while admittedly impaired and while two unrestrained children accompanied him as passengers," sufficient to prove second-degree cruelty to children).

■ There was ample evidence to support appellant's conviction. Having credited Ms. Smith's account of events, Judge Retchin found that appellant acted "recklessly ... in assaulting the person who was holding the child," which resulted in the child falling to the ground and receiving a visible head injury. Moreover, Judge Retchin "wholly disbeliev[ed]" appellant's claim of intent to protect the child. These findings were well within the trial court's province, and we find no basis to disturb them on this record.

### B. Attempted PPW (b)

Appellant also challenges her conviction for attempted PPW (b), claiming the government failed to demonstrate that posses-

sion of pepper spray is prohibited by the statute. D.C.Code § 22–4514(b) provides: "No person shall within the District of Columbia possess, with intent to use unlawfully against another, an imitation pistol, or a dagger, dirk, razor, stiletto, or knife with a blade longer than 3 inches, or other dangerous weapon." Pepper spray is not listed by name, but the government argues that it falls within the definition of "other dangerous weapon."

■ Concededly, pepper spray is a weapon—it has no other apparent use, it is defined by statute as a "destructive device," *see* D.C.Code § 7–2501.01(7)(C) (2001), and statutes governing its possession and use are codified alongside regulations that apply to firearms. However, the PPW (b) statute requires that an unlisted object be not only a "weapon" but also "dangerous," a term we have held to mean "likely to produce death or great bodily injury...." *See, e.g., Stroman v. United States*, 878 A.2d 1241, 1245 (D.C.2005). We have previously defined "great bodily injury" as " 'bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental facility.' " *Id.* at 1245 (quoting *Alfaro v. United States*, 859 A.2d 149, 161–62 (D.C.2004) (equating "great bodily injury" required to show weapon's dangerousness under PPW (b) statute with "serious bodily injury," as defined in our statutes and case law related to aggravated assault and sexual abuse)).

■ The government submits that pepper spray meets this definition because it is dangerous *per se* or, alternatively, that it may become dangerous by the use made of it. We have acknowledged that § 22–4515(b) includes a "non-exhaustive list of weapons readily classifiable as dangerous *per se*." *In re D.T.*, 977 A.2d 346, 349, 353

(D.C.2009). A weapon is "dangerous *per se* where the item, 'when used in the manner that [it was] designed to be used,' is 'so clearly dangerous' that it merits such designation as a matter of law." *Id.* at 349 (quoting *Williamson v. United States*, 445 A.2d 975, 979 (D.C.1982) (citing rifles, pistols, swords, and daggers as examples)); *see also Reed v. United States*, 584 A.2d 585, 588 (D.C.1990) (citing handgun, switchblade as examples).

■ The possession of objects that are not inherently dangerous may also be prohibited under PPW (b). "When an object is not dangerous *per se* ... the trier of fact must consider whether that object is known to be likely to produce death or great bodily injury in the manner it is used, or threatened to be used." *Stroman*, 878 A.2d at 1245 (reversing conviction for attempted PPW (b) related to assault with flip-flop sandal) (internal quotation marks omitted).

We have not previously addressed (at least in a published opinion) whether pepper spray is a dangerous weapon within the meaning of D.C.Code § 22–4514(b).[1]

In the District of Columbia, members of the general public are expressly permitted to possess lacrimators[2] like pepper spray for defensive use under certain circumstances. D.C.Code §§ 7–2502.12 to .14 (2001).[3] The legislative history of these provisions suggests that possession of such sprays was authorized precisely because they are *not* dangerous *per se*—the Council noted that, while self-defense sprays may cause pain, their effects are non-lethal and temporary. D.C. Council Comm. on the Judiciary, Comm. Report on Bill 9–587, "Legalization of Self–Defense Sprays Amendment Act of 1992," L09–0244, Period 9, at 2–4 (November 25, 1992).[4]

Nor did the government adduce evidence to demonstrate that pepper spray is dangerous as a matter of law. The prosecution did not introduce the pepper spray canister itself, leaving the record devoid of information regarding the spray's type, concentration, or heat rating;[5] indeed, only appellant's admission and witness testimony establishes that the substance was pepper spray. The government offered no other testimony—expert or otherwise—about the effects of pepper spray or the

---

1. In *Snell v. United States*, 754 A.2d 289 (D.C. 2000), the defendant used pepper spray, but was only convicted of simple assault.

2. A lacrimator (or lachrymator) is a substance that "causes the eyes to sting and water profusely." *Bowie v. State*, 494 P.2d 800, 802 (Alaska 1972).

3. The statutes regulating the possession and use of "self-defense spray" require registration of the device, D.C.Code § 7–2502.14 (2001), and provide:

   Notwithstanding the provisions of § 7–2501.01(7)(C) [defining tear gas and other lacrimators as destructive devices], a person 18 years of age or older may possess and use a self-defense spray in the exercise of reasonable force in defense of the person or the person's property only if it is pro-

pelled from an aerosol container, labeled with or accompanied by clearly written instructions as to its use, and dated to indicate its anticipated useful life.
   D.C.Code § 7–2502.13 (2001).

4. According to the legislative history, there are three main types of self-defense sprays—oleoresin capsicum, colloquially known as OC spray or pepper spray; CS (orthochlorobenzalmalonitrile) spray; and CN (alphachloroaceta-phenone) spray.

5. Like the peppers from which it is derived, the "hotness" of pepper spray is measured according to the Scoville heat unit scale. *United States v. Mosley*, 635 F.3d 859, 862 (6th Cir.2011) (using the Scoville scale to compare pepper spray to the jalapeño, noting that "pepper spray may range from 400 to 1,000 times hotter than a jalapeno").

victim's pain.[6]  *See Harper v. United States*, 811 A.2d 808, 810 (D.C.2002) (evidence insufficient to support conviction for PPW (b) where only evidence of flower pot's capacity to inflict "death or great bodily injury" when thrown at occupants of car was description of flower pot as "little"); *cf. In re S.P.*, 465 A.2d 823, 825 (D.C.1983) (expert testimony established that nunchaku, while historically used for agricultural purposes, was principally a weapon, with "capacity to cause great injury or death").  The only evidence as to pepper spray's injurious effects was Ms. Smith's testimony that she heard Ms. Allen "screaming [']my eyes, my eyes[']" immediately after appellant sprayed her face, and that she continued to say "my eyes, my eyes" while she "was sitting on the back of the fence in handcuffs...."

██ Even if we assume that pepper spray could inflict "great bodily injury"

under some circumstances, the government did not meet its burden to show that appellant's use of pepper spray was likely to or did cause such injury here.  Viewing the record in the light most favorable to the government, as we must, the most plausible basis for finding great bodily injury would be that the spray caused "extreme physical pain."[7]  But the government did not adduce enough evidence to meet our "exacting standard" for proving such pain.  *See Jackson v. United States*, 940 A.2d 981, 988 n. 4 (D.C.2008) (applying same standard to aggravated assault to evaluate extreme physical pain as was used in context of PPW in *Alfaro*).  We have held that pain that is "merely significant," rather than "exceptionally severe if not unbearable," does not constitute extreme physical pain.[8]  *Swinton v. United States*, 902 A.2d 772, 777–78 (D.C.2006) (evidence of pain did not rise to level of

---

6. *See also United States v. Harris*, 44 F.3d 1206, 1218 (3d Cir.1995) (holding the record was insufficient to support findings that mace spray had caused "bodily injury" for purposes of sentencing enhancement, noting that "[t]he degree of injury from mace will differ depending on such factors as the strength of the particular product used, the distance between the victim and the dispenser, and the angle of delivery.  Accordingly, there will undoubtedly be crimes involving the use of mace where no 'bodily injury' will occur, just as there will be such crimes where a victim will experience such injury.").  *Cf. also United States v. Neill*, 166 F.3d 943 (9th Cir.1999) (pepper spray dangerous weapon for purposes of sentencing enhancement where there was testimony from victim regarding severe asthma brought on by pepper spray, requiring lifelong treatment); *United States v. Bartolotta*, 153 F.3d 875, 879 (8th Cir.1998) (mace spray was used as dangerous weapon for purposes of sentencing enhancement where there was testimony from victim that she developed chemical pneumonia requiring extended treatment).

7. "[P]rotracted loss or impairment of the function of a bodily ... organ" might also be a plausible basis, but there is insufficient evidence to find such an impact absent evidence of the duration of the spray's effects on Ms. Allen.

8. *See also, e.g., Bolanos v. United States*, 938 A.2d 672, 677, 681–82 (D.C.2007) (stabbing victim testimony as to extreme physical pain was legally sufficient, but evidence of "extreme physical pain" as to other two victims was insufficient where victims did not testify as to amount of pain, which was not so debilitating as to prevent them from walking from scene of injury with assistance, despite evidence that they received pain medication during medical treatment); *Earl v. United States*, 932 A.2d 1122, 1132 (D.C.2007) (pain insufficient to show serious bodily injury where victim was punched and kicked, resulting in sprained wrist, bruising to body and kidney, and testified to "severe" pain); *Nixon v. United States*, 730 A.2d 145, 148–50 (D.C.1999) (evidence of two gunshot wounds, one behind ear with visible bleeding, were insufficient to show extreme physical pain where victims "were not unconscious and did not manifest immobilizing pain" and the government failed to present testimony from the victims or medical evidence about the extent of the injuries).

extreme physical pain and was insufficient to support conviction for aggravated assault).

In *Jackson*, we spoke at length about the sort of injuries that would satisfy such a standard in the context of aggravated assault while armed. We noted that, of the

> particularly egregious cases in which the evidence presented at trial supported findings of extreme physical pain[,][a]ll ... have involved substantial and well-documented evidence of pain and related medical treatment (often including emergency surgery and lengthy hospital stays) arising from some combination of life-threatening gunshot wounds, deep and penetrating stab wounds, broken bones, extensive internal or external blood loss, perforated organs or other serious internal injuries, loss or near loss of consciousness, and severed muscles, tendons, or nerves.

940 A.2d at 990 (citing cases).

By contrast, every indication from the Council's decision to authorize possession of self-defense sprays suggests that, although their effects are intended to be "incapacitating," any pain is temporary, and would be unlikely to meet our standard for extreme physical pain.[9] D.C. Council Comm. on the Judiciary, Comm. Report on Bill 9–587, "Legalization of Self–Defense Sprays Amendment Act of 1992," L09–0244, Period 9, at 2 (November 25, 1992). Absent a more substantial

showing from the government, there is no reason to think that the effects here were exceptional.

That is not to say that pepper spray is categorically *not* a dangerous weapon. We do not foreclose the possibility that, on a different record, pepper spray might be shown to be dangerous in certain formulations, when used in a particular manner, or when resulting in the requisite degree of injury. In this case, however, the evidence was insufficient to support a finding that pepper spray was a dangerous weapon within the meaning of PPW (b).

### III. Conclusion

For all the foregoing reasons, we affirm the convictions for cruelty to children and assault, and remand with instructions to vacate appellant's conviction for attempted PPW (b). *See Burks v. United States*, 437 U.S. 1, 16–18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (where evidence was insufficient to sustain conviction, vacatur rather than retrial is the proper remedy).

*It is so ordered.*

---

9. The Council's Committee Report noted that pepper spray is "non-lethal," can cause "profuse tearing, an intense burning sensation and disorientation," and may render "the assailant incapacitated for about 25–45 minutes, thereby allowing the victim time to escape." D.C. Council Comm. on the Judiciary, Comm. Report on Bill 9–587, "Legalization of Self–Defense Sprays Amendment Act of 1992," L09–0244, Period 9, at 2 (November 25, 1992). Although the report also noted that the Metropolitan Police Department had expressed concern about the "potential for serious harm to users or innocent bystanders, the danger to children who get a hold of these sprays, and the potential use as an offensive weapon by criminals[,]" this apparently led MPD to endorse the age restrictions on possession and registration requirements included in the Act, rather than to oppose the provision. *Id.* at 4.