*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CM-737

LAWRENCE N. HARRIS, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(DVM-892-14)

(Hon. Marisa J. Demeo, Trial Judge)

(Argued June 18, 2015                    Decided October 29, 2015)

*Jeffery L. Light* for appellant.

*Ryan Malone*, Assistant United States Attorney, for appellee. *Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Margaret Barr* and *Ann K. H. Simon*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN and EASTERLY *Associate Judges*, and RUIZ, *Senior Judge*.

Opinion for the court by *Senior Judge* RUIZ.

Dissenting opinion by *Associate judge* GLICKMAN at page 13.

RUIZ, *Senior Judge*:  Following a bench trial, the trial court found appellant,

Lawrence Harris, guilty of misdemeanor malicious destruction of property arising

out of an incident in which appellant damaged the front door of the home he shared with his mother and sister. On appeal, he argues that the evidence was insufficient to support his conviction, contending that because he used only the force that was reasonably necessary in an attempt to gain re-entry into his lawful residence he could not be found to have acted "maliciously," a statutory element of the offense for which he was charged and convicted. We conclude that because the evidence does not support that appellant was aware of a plain and strong likelihood that his efforts to gain entry to his home would cause property damage, it is insufficient to find that he had the requisite malice. We reverse the conviction.

**I.**

At the time of the incident that led to the charge of malicious destruction of property, appellant resided with his mother, Trenice Harris, his sister, and her child, all of whom were named on the lease. On April 15, 2014, at 3:00 a.m., Ms. Harris called the police because appellant was "acting out . . . tripping off of some PCP . . . had tor[n] the blinds down in the kitchen . . . [and] kicked the back door," leaving it open. When the police responded to the call, appellant was not arrested; instead the officers informed Ms. Harris that they could not force appellant to leave the house because his name was on the lease. Later, Ms. Harris called the police a

second time, because appellant was "still acting out" and under the influence of PCP. The police returned to the house and again informed Ms. Harris that they could not make appellant leave, but requested that she go to her room, which was located on the upper level of the house, and that appellant remain in his bedroom, located in the basement.

After the police left, appellant went upstairs into Ms. Harris's bedroom where an argument began over her "pocketbook." Ms. Harris and appellant tussled "back and forth with [the] pocketbook" until she threatened to hit appellant with an iron. She called the police a third time; when the police officers arrived they did not arrest appellant; instead they escorted appellant out of the house. Sometime later, Ms. Harris went to the basement to ensure that the doors were locked and saw her son hiding behind his bed. She asked him to leave and he complied. Ms. Harris called to inform the police.

Appellant again returned to the house, but found that the front door was locked. As he did not have a key, appellant began kicking the door. According to Ms. Harris's testimony, she looked out of the peephole in the door and saw appellant acting "erratical[ly]." He kept "kicking and kicking and kicking" the door, "trying to tear that door in." Unable to get the door open, appellant

eventually left. Ms. Harris called the police and they took pictures of the damage. A few days later, appellant was arrested and charged with malicious destruction of property based on the damage to the door.

The trial court heard testimony from Ms. Harris, Officer Imbrenda, and appellant, and reviewed transcripts of Ms. Harris's calls to the police and photographs of the damage. Officer Nicholas Imbrenda, one of the officers who responded to Ms. Harris's calls, testified that the door was "visibly damaged": the door hinges were bent and there was damage to the "bottom left quarter panel" of the door. Ms. Harris testified that appellant's kicking "cracked the whole framing around the door and . . . the paneling of the door." She said that "the door was coming apart from the inside" and that pieces of wood had splintered from the door. She also identified pictures of the damage taken by the police, which were taken from inside of the house. According to Ms. Harris, "[f]rom the outside of the door you couldn't tell nothing." Appellant testified that he had knocked, not kicked, and was not aware of the damage to the door because he could not see the damage from the outside and he had not returned to the house before he was arrested.

The trial court credited Ms. Harris's testimony, finding that she was truthful in her answers and "had a sufficient ability to observe [the events] on the night in question." The court discredited appellant's testimony that he had merely knocked, commenting on his demeanor in court and inconsistencies in his testimony regarding whether he remembered kicking the door or if he was even present at the residence on the night of the incident. Based on the evidence of the damage to the door, the trial court found that appellant had used an "excessive" amount of force—not knocking, but kicking—and had "kicked the door multiple times with great force causing damage," consistent with "someone . . . either trying to get in or . . . trying to damage the door." The court concluded that appellant was guilty of malicious destruction of property because "he either did intend to damage the door to get in" or acted with "aware[ness] that his repeated kicking with great force . . . create[d] a substantial risk of harm to the door."[1]

---

[1] The trial court also found that "the property was not [appellant's], [but] belong[ed] to the [g]overnment." This finding was apparently based on testimony that the apartment where appellant and his family lived was Section 8 housing. There is no evidence in the record, however, as to the ownership of the property, but it is undisputed that appellant was a tenant, not an owner.

## II.

Appellant argues that there was insufficient evidence to support his conviction. He contends that there was no evidence that he acted with malice, as required by the statute, and that the trial court failed to "adequately explain its specific findings as they relate to the requirements for showing malicious destruction." He asserts that the trial court's factual finding—that the amount of force used was consistent with someone trying to get in—means that his use of force was not malicious and is inconsistent with the trial court's ultimate finding of guilt. We agree.

"In reviewing a claim challenging the sufficiency of the evidence, we must 'view the evidence in the light most favorable to the government, giving deference to the [factfinder's] right to weigh the evidence, determine the credibility of the witnesses, and draw inferences from the evidence presented.'" *Mitchell v. United States*, 985 A.2d 1125, 1133-34 (D.C. 2009) (quoting *McCullough v. United States*, 827 A.2d 48, 57 (D.C. 2003)). "We can only reverse a conviction on this ground if there is no evidence upon which a reasonable mind could infer guilt beyond a reasonable doubt." *Id*. at 1134. "Where the [factfinder] is a trial judge,

we will not reverse a conviction unless 'an appellant has established that the trial court's factual findings are plainly wrong or without evidence to support them.'" *Jones v. United States*, 16 A.3d 966, 970 (D.C. 2011) (quoting *In re D.T.*, 977 A.2d 346, 356 (D.C. 2009)).

Appellant was convicted under D.C. Code § 22-303, which provides, in relevant part, "[w]hoever maliciously injures or breaks or destroys, or attempts to injure or break or destroy, by fire or otherwise, any public or private property, whether real or personal, not his or her own," shall be found guilty of malicious destruction of property. D.C. Code § 22-303 (2012 Repl.). A plain reading of the statute establishes that "[b]oth malice and intent are elements of the malicious destruction of property offense, and more than proof of negligence is required to obtain a conviction." *Gonzalez v. United States*, 859 A.2d 1065, 1067 (D.C. 2004). The "'requisite intent' for malicious destruction of property is an 'intent to injure or destroy the property, for a bad or evil purpose.'" *Id.* at 1067-68 (quoting *Ross v. United States*, 520 A.2d 1064, 1065 (D.C. 1987)). We have defined malice as

> (1) the absence of all elements of justification, excuse or recognized mitigation,[2] and (2) the presence of *either* (a) an actual intent to cause the particular harm which is produced or harm of the same general nature, *or* (b) the wanton and willful doing of an act *with awareness of a plain and strong likelihood that such harm may result.*

*Guzman v. United States*, 821 A.2d 895, 898 (D.C. 2003) (quoting and noting emphasis in *Thomas v. United States*, 557 A.2d 1296, 1299 (D.C. 1989)). A finding that the accused intended the actual harm which resulted from his wrongful acts is not an essential prerequisite to the existence of malice. "All that is required is a conscious disregard of a known substantial risk of the harm which the statute is intended to prevent." *Gonzalez*, 859 A.2d at 1067 (quoting *Carter v. United States*, 531 A.2d 956, 962 (D.C. 1987)). Thus, to support a conviction for malicious destruction of property, the trial court must find that the defendant either intended to cause the harm to the property or acted willfully and wantonly, with the

---

2 Appellant argues that as a co-tenant he was "privileged to use reasonable force against . . . co-leased [property] to gain entry to his own home," a legal question he contends we left open in *Jackson v. United States*, 819 A.2d 963, 967 n.2 (D.C. 2003). Because we conclude that the evidence was insufficient to support that he acted with malice, there is no need to address that legal issue in this case.

awareness of the "plain and strong" likelihood of that harm. *Guzman*, 821 A.2d at 898.[3]

The trial court, following the definition of malice, found that appellant "intended to damage or destroy the property or was aware that his conduct created

---

[3] The Model Penal Code abandons the common law terms general intent, specific intent, and malice and categorizes various levels of culpability as "purposely, knowingly, recklessly or negligently . . . with respect to each material element of the offense." MODEL PENAL CODE § 2.02 (1) (1962). A person "purposely" commits a crime if he acts with a "conscious object[ive] to engage in conduct of that nature or to cause such a result; and [] if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist." *Id*. § 2.02 (2)(a). A person "knowingly" commits a crime "(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result." *Id*. § 2.02 (2)(b). "When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist." *Id*. at § 2.02 (7). A person acts "recklessly" if he "consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id*. § 2.02 (2)(c).

As this court has defined "malice" in the context of the malicious destruction of property statute, the "actual intent to cause the particular harm," *Guzman*, 821 A.2d at 898 (citation omitted), is equivalent to the Model Penal Code's "purposely" state of mind. The "wanton and willful" act with "awareness of a plain and strong likelihood that such harm may result," *id*., blends the Model Penal Code's "knowingly" and "recklessly" states of mind.

a substantial risk of harm to that property, but engaged in that conduct, nonetheless." We are not confident, however, that the record supports the trial court's findings beyond a reasonable doubt. *See Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc) (noting that appellate review of factual findings is deferential but not "toothless").

The trial court's finding that appellant *intended* to cause damage to the door cannot be sustained. The trial court commented that the amount of force used by appellant was consistent with "someone . . . either trying to get in *or* someone[] trying to damage the door." (Emphasis added.) The court noted that the damage was "actually closer to . . . the door knob," which "seems to suggest . . . that [it] probably is a little easier to get in by kicking the lower panel" and "the evidence is consistent . . . that that's probably a better way to get in." Thus, as the trial court observed, the evidence supports that appellant's intent was not to "damage or destroy" the door but to kick it open so he could re-enter his residence. Appellant had repeatedly shown that he wanted to remain in his home, including by returning to the house and by hiding in the basement, after the police had escorted him out of his home. Except for the fact of the kicking and the damage to the front door, there is scant evidence to support a finding that appellant acted with the purpose of

damaging the door.[4] The trial court expressly found that the evidence equally supported that appellant's intent was to enter as to damage the door. Where evidence of guilt is in equipoise with evidence of innocence, it is perforce insufficient for conviction by the constitutional standard, beyond a reasonable doubt. *See Rivas*, 783 A.2d at 133-34.

We turn to the trial court's alternative finding that appellant "was aware that his conduct created a substantial risk of harm to [the door], but engaged in that conduct, nonetheless." Ms. Harris testified that appellant returned after the police had escorted him out of the house and began acting erratically and kicking the door. As a result of the force used by appellant, a door panel and the door frame were cracked. This testimony, corroborated by pictures depicting the damage to the door, supports the trial court's finding that appellant kicked the door multiple times, with "excessive" force—a "wanton and willful" act. *Guzman*, 821 A.2d at 898.

---

[4] Ms. Harris testified that she was familiar with the smell of PCP, noticed the smell emanating from appellant, and that appellant had torn down the blinds in the kitchen and kicked the back door open. The officer who responded to the call, however, did not detect PCP odor on appellant nor did he see any torn blinds or other sign of violent disorder.

The question remains whether appellant "acted with awareness of a plain and strong likelihood that such harm may result." *Id.* Officer Imbrenda testified that the door was "visibly damaged" and mentioned that he saw bent door hinges and damage to one of the two bottom panels. The photographs introduced at trial, as noted by the trial court, showed damage to the frame and panel on the inside of the door. Damage to the door hinges would not have been visible to a person outside of the home because the door hinges are mounted on the inside. Officer Imbrenda did not state that the damage was visible from the outside of the door. And although Ms. Harris testified that, "[t]he door was coming apart from the inside," where she was located, she flatly stated that "[f]rom the outside of the door [one] couldn't tell" that there was damage to the door. Appellant testified that he first learned of the destruction of property accusation when he was arrested, and had no knowledge of the damage to the door because there was no damage to the exterior side of the door where he was located and he could not see inside. He had not gone back into the house after his attempt to enter had failed. The trial court could infer from the damage to the door that appellant kicked with such force that he should have known that his actions would result in some damage. For criminal liability, however, more than negligence must be shown, *see Gonzalez*, 859 A.2d at 1067; there must be proof of "*awareness of a plain and strong likelihood that such*

*harm may result.*" *Guzman*, 821 A.2d at 898. The evidence in this case does not support that appellant had such awareness. [5]

Because the evidence was insufficient to prove malice, we reverse appellant's conviction.

*So ordered*.

GLICKMAN, *Associate Judge*, dissenting: Because the front door was locked, and unreceptive to more gentle persuasion, it was obvious to appellant that he would have to *break* in to gain entry. And so appellant decided to batter the stoutly resistant front barrier with such fury, force, and persistence that he substantially

---

[5] Our dissenting colleague relies on *Jackson*, 819 A.2d at 967, as support for his conclusion that the evidence in this case was sufficient to convict appellant of malicious destruction of property. The principal issue in *Jackson* was the applicability *vel non* of the malicious destruction of property statute to a co-owner. *See id*. at 964-67. Although the court also concluded that the evidence was sufficient to convict, there is scant description of the evidence presented about the defendant's actions. *See id*. at 967 ("Mrs. Jackson testified that appellant kicked the door and caused substantial damage to it.") There was also evidence, however, that even after gaining entry, the defendant had threatened to "burn the house down." *See id*. at 964 n.1 (noting that Jackson was acquitted of this charge). There is no discussion of the defendant's state of mind nor is there any indication that the trial judge made findings that called into question the presence of malice. In short, in *Jackson* the court was not presented with and did not discuss the issue in this case: whether the actions were taken "maliciously."

damaged not only the wooden door itself, but also its metal hinges and the surrounding doorframe. This court previously has held such evidence sufficient to support a conviction for malicious destruction of property,[1] and I see no reason not to do so here. Even if appellant did not actually see the damage he caused, I think the evidence unquestionably permitted the trial judge to disbelieve his professions of obliviousness and find beyond a reasonable doubt that appellant both *knew* there was a "plain and strong likelihood"[2] he would inflict significant physical damage to the doorway, and *meant* to do exactly that in order to gain entry. Appellant had to know he could not kick his way through a locked door without damaging it in some way. Any sane person would realize that. Accordingly, I respectfully dissent.[3]

---

[1] *See Jackson v. United States*, 819 A.2d 963, 967 (D.C. 2003) (holding evidence sufficient to convict a co-owner of malicious destruction where he kicked and substantially damaged a locked door in order to enter the premises).

[2] *Guzman v. United States*, 821 A.2d 895, 898 (D.C. 2003) (quoting *Thomas v. United States*, 557 A.2d 1296, 1299 (D.C. 1989)).

[3] The majority finds it unnecessary to address appellant's argument that he was privileged to break the door down to gain entry because he was a co-tenant on the lease. *Ante* at 8 n.2. As the majority decides this case in appellant's favor on a different ground, and nothing I say about his privilege contention can alter the outcome of this appeal, I, too, shall refrain from addressing it. *But see Jackson*, 819 A.2d at 967 (holding that a co-owner of property may be found criminally liable for its malicious destruction).