# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-01089-COA

**McANDREW RICKS**                                                        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                    **APPELLEE**

DATE OF JUDGMENT:                09/16/2020
TRIAL JUDGE:                           HON. MARK SHELDON DUNCAN
COURT FROM WHICH APPEALED:   LEAKE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        OFFICE OF STATE PUBLIC DEFENDER
                                              BY: MOLLIE MARIE McMILLIN
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                              BY: ALLISON ELIZABETH HORNE
DISTRICT ATTORNEY:                  STEVEN SIMEON KILGORE
NATURE OF THE CASE:               CRIMINAL - FELONY
DISPOSITION:                          AFFIRMED - 12/07/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., LAWRENCE AND EMFINGER, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1.     McAndrew Ricks was convicted on September 16, 2020, of aggravated assault for causing serious bodily injury to Ricky Jackson when Ricks poured coffee on Jackson during an altercation at the Leake County Jail. The Leake County Circuit Court sentenced Ricks as a habitual offender to serve twenty years in the custody of the Mississippi Department of Corrections (MDOC). Ricks filed a motion for a new trial or judgment notwithstanding the verdict (JNOV), which the court denied. Ricks appeals claiming that the State failed to prove by sufficient evidence that he intended to cause serious bodily injury to Jackson when he poured his coffee on him. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Ricks and Jackson were both inmates at the Leake County Jail. On October 5, 2019, a fight between Ricks and Jackson occurred in the jail's common area. Prior to the altercation, Jackson had wiped a piece of rice off his table and onto the floor. Ricks, who claimed he was in charge of cleaning the area, asked Jackson to sweep up the rice. Jackson initially refused. Ricks asked for a broom and handed it to Jackson. Jackson took the broom and began sweeping.

¶3.     Both men exchanged verbal threats. Ricks threatened to throw his coffee on Jackson, and Jackson responded by "jabbing"[1] Ricks' right arm with the broomstick. Jackson turned around to continue sweeping, and Ricks poured his coffee down Jackson's back. Ricks began punching Jackson, and Jackson retaliated by pinning Ricks down and punching Ricks in the face. When the fight ended, Ricks had two chipped teeth and a black eye, and Jackson had first and second degree burns on his neck and back. Jackson was taken to Baptist Hospital, where his burns were treated and cleaned. The jail's nurse, Brenda Shirley, administered follow-up treatment to Jackson's burns for a month. Jackson still has scarring from the first and second degree burns.

¶4.     Ricks' criminal trial began on September 9, 2020. A video of the altercation, which

---

[1] Ricks used the word "jabbing" to describe how Jackson touched him with the broomstick prior to Ricks pouring coffee on him: "I really didn't have any intentions on really doing it until he came back up and, like, provoked me by jabbing me with the broom a little bit." Ricks also described the jab as a hit: "[O]nce he hit me with the broom, I felt like he was going to do more . . . ." Jackson testified that he took the broom from Ricks and began sweeping with his back turned to Ricks. Jackson never testified to jabbing or hitting Ricks with the broomstick.

was captured by jailhouse security cameras, was admitted into evidence. However, it had no sound. It is unclear from the video whether Jackson actually jabbed Ricks with the broomstick.[2] Jackson and Ricks each took the stand and gave their accounts of what happened and what was said while the video was played for the jury.

¶5. The State called Jackson to the stand to testify about what occurred on the day of the fight. Jackson said that Ricks told him to clean up rice that Jackson knocked onto the floor. Initially, Jackson did not want to clean up the rice because it was not his food, but Jackson ultimately agreed to sweep the floor. Ricks handed Jackson a broom, and Jackson took it from Ricks. Jackson testified that once he took the broom, Ricks stated, "You'd better be glad I ain't like I used to be." Jackson responded with, "Who you think you is?" Jackson testified that he turned his back to Ricks and began sweeping. Then Ricks poured coffee down Jackson's back and started attacking him: "[N]ext thing I know, [Ricks] dashed the coffee on me and started swinging." Jackson said he did not threaten Ricks prior to the coffee being poured. Jackson had first and second degree burns that required initial treatment by hospital staff and a month-long treatment by the jail's nurse.

¶6. The defense called Ricks to the stand to testify about what occurred the day of the fight. On direct examination, Ricks testified that Jackson was known to have a bad attitude, so Ricks usually avoided Jackson. Ricks stated that he tried to hand Jackson the broom to sweep up the rice Jackson had wiped on the floor, but Jackson snatched the broom from

---

[2] The attorney for the State questioned Ricks about exactly where on the video the jabbing of the broomstick occurred. While it is still difficult to see, Ricks did indicate that the jab is visible.

3

Ricks' hands. After snatching the broom, Jackson started using "aggressive words" toward Ricks, so Ricks launched his own verbal attacks to defend himself. Ricks was worried Jackson would hit him with the broomstick because Jackson had been in two fights the week before the altercation at issue. Ricks testified that Jackson hit another inmate with his food tray. Ricks testified that he threatened to throw his coffee on Jackson, but another inmate stopped him. Ricks also noted that he originally had the coffee to drink, not to pour on Jackson. Ricks stated that Jackson began threatening him and poked him on the right arm with the broomstick. Ricks testified that he defended himself by pouring the coffee on Jackson. Ricks did not think the coffee would burn Jackson because he does not make coffee very hot when he is drinking it.

¶7. On cross-examination, Ricks testified that he only poured the coffee on Jackson after Jackson poked him in the arm with the broomstick. Ricks had warned Jackson that "[i]f you hit at me with that broom, man, we're going to have some problems in here." When this threat was made, Ricks did not have the coffee in his hands. Ricks agreed that his threats to pour the coffee on Jackson occurred before he was ever poked with the broomstick. Ricks testified that he did not intend to pour the coffee on Jackson until Jackson poked him with the broomstick. After Jackson poked him, Ricks felt like he had to defend himself by pouring the coffee on Jackson: "I really didn't have intentions on really doing it until he came back up and, like, provoked me by jabbing me with the broom a little bit." Ricks testified that he did what was necessary to protect himself.

¶8. The jury found Ricks guilty, and on September 16, 2020, the circuit court entered its

4

judgment convicting Ricks of aggravated assault pursuant to Mississippi Code Annotated section 97-3-7(2)(a) (Supp. 2016). Ricks filed a motion for a new trial or JNOV. The court denied the motion. Ricks appealed his conviction, arguing that the State did not provide sufficient evidence to convict him of aggravated assault because the State failed to prove that Ricks intended to cause serious bodily injury to Jackson when he poured hot coffee on Jackson's neck and back.

## ANALYSIS

¶9. Sufficiency-of-the-evidence claims are reviewed de novo. *Sanford v. State*, 247 So. 3d 1242, 1244 (¶10) (Miss. 2018). When reviewing any challenge to the sufficiency of the evidence, the relevant question is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (quoting *Hearn v. State*, 3 So. 3d 722, 740 (¶54) (Miss. 2008)). The evidence is reviewed in a light most favorable to the State. *Henley v. State*, 136 So. 3d 413, 416 (¶8) (Miss. 2014). The State is given all favorable inferences that can be reasonably drawn from the evidence that was presented at trial. *Id*. Therefore, if after review, the court finds that "any rational trier of fact could have found each and every one of the elements of the crime beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution, the verdict must stand." *Smith v. State*, 250 So. 3d 421, 424 (¶12) (Miss. 2018) (quoting *Cowart v. State*, 178 So. 3d 651, 666 (¶41) (Miss. 2015)).

¶10. Mississippi Code Annotated section 97-3-7(2)(a) states that an individual is guilty of aggravated assault if he "(i) attempts to cause serious bodily injury to another, or causes such

5

injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; [or] (ii) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm . . . ." Ricks argues that the State failed to show he intended to cause serious bodily injury to Jackson because Ricks did not think his coffee was hot enough to burn Jackson.

¶11.    Ricks' case is similar to *Shaw v. State*, 139 So. 3d 79 (Miss. Ct. App. 2013). In *Shaw*, a defendant was convicted of aggravated assault after he bit part of Shaun Killingsworth's ear off. *Id.* at 82 (¶¶4-6). The two were attending a party when Shaw and Killingsworth began fighting each other. *Id.* at (¶4). Prior to the fight, Shaw threatened Killingsworth with an empty beer bottle, jumped up and down on the hood of Killingsworth's car, and beat his chest at Killingsworth when Killingsworth told Shaw to get off his car. *Id.* at (¶4). Shaw was arrested and charged with aggravated assault for biting part of Killingsworth's ear off. *Id.* at (¶6). Shaw was convicted of aggravated assault, but he appealed his conviction, arguing that the State failed to present evidence to support the "purposely or knowingly" elements of aggravated assault. *Id.* at 83 (¶12).

¶12.    This Court affirmed Shaw's conviction, noting, "[t]he presumption of the law is that each person intends the natural consequences of his actions." *Id.* at 84 (¶13). The Court said, "Intent ordinarily must be inferred from the acts and conduct of the party and the facts and circumstances attending them." *Id.* The Court also stated that in instances where intent is not "expressly evident," it can still be shown through the "acts of the person involved at

6

the time, and by showing the circumstances surrounding the incident." *Id.* A determination of whether a person intended to commit an act is a question that should be left for the jury to decide. *Id.* This Court found that Shaw's intent to cause serious bodily injury to Killingsworth could be inferred from the testimony given at trial "regarding Shaw's anger and antagonizing behavior towards Killingsworth." *Id.* Right before the fight broke out, numerous witnesses testified that Shaw was beating his chest and yelling at Killingsworth. *Id.* at 84 (¶15). The Court found that the testimony given at trial provided sufficient evidence to show Shaw was guilty of aggravated assault. *Id.* at 85 (¶17).

¶13. Here, the jury saw the video of the fight between Ricks and Jackson and heard testimony from both men. The jury listened to Jackson testify that he was cleaning up the rice he knocked to the floor when Ricks began threatening him. Jackson testified that when he turned his back to Ricks and continued cleaning, Ricks poured hot coffee down his back. The jury learned that Jackson received first and second degree burns from the coffee and saw Jackson's scarring. The jury also heard Ricks testify that he was scared of Jackson because of Jackson's history of fighting. Ricks testified that Jackson snatched the broom from his hands and was verbally aggressive toward him. The jurors heard Ricks admit that he threatened to pour hot coffee on Jackson before Jackson ever touched him with the broomstick. The jury also heard Ricks say that he had no intention to actually pour the coffee on Jackson until after Jackson poked him with the broomstick.

¶14. The jury is the ultimate trier of fact. *Brown v. State*, 764 So. 2d 463, 467 (¶9) (Miss. Ct. App. 2000). The jury listens to the evidence, observes the witnesses, and determines the

7

credibility of witnesses and the weight of evidence. *Id.* Jurors are "permitted to, and have a duty to, resolve conflicts in testimony they hear." *Hicks v. State*, 812 So. 2d 179, 194 (¶40) (Miss. 2002). "[Jurors] may believe or disbelieve, accept or reject, the utterances of a witness." *Id.* (quoting *Gandy v. State*, 373 So. 2d 1042, 1045 (Miss. 1979)).

¶15. The jury weighed all of the evidence presented and found that the State proved beyond a reasonable doubt that Ricks was guilty of aggravated assault. The jury was able to examine all of the evidence presented, including the mindset of Ricks and Jackson and the circumstances surrounding the altercation, and determine that Ricks had the intent to cause serious bodily injury to Jackson when he poured the hot coffee down Jackson's neck and back. *See Shaw*, 139 So. 3d at 84 (¶13). Considering the evidence in the light most favorable to the State, this Court concludes that there was sufficient evidence that would lead a reasonable trier of fact to find that the essential elements of aggravated assault had been proven beyond a reasonable doubt.

## CONCLUSION

¶16. After review, this Court finds that the State provided sufficient evidence for the jury to convict Ricks of aggravated assault. Accordingly, we affirm Ricks' conviction.

¶17. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**