# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00398-COA

**SHAUN SHAQUILLE LEWIS**                                                **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                 **APPELLEE**

DATE OF JUDGMENT:            02/08/2024
TRIAL JUDGE:                 HON. LAWRENCE PAUL BOURGEOIS JR.
COURT FROM WHICH APPEALED:   HARRISON COUNTY CIRCUIT COURT,
                             FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                             BY: AMBER LAUREN STEWART
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: JULIANNE KAY BAILEY
DISTRICT ATTORNEY:           WILLIAM CROSBY PARKER
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 10/21/2025
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Shaun Lewis was convicted of malicious mischief for breaking a car's windows with a baseball bat. Lewis argues that he was entitled to a mistrial because he was unfairly surprised by a witness's testimony and that the evidence is insufficient to sustain his conviction. We find no reversible error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On September 20, 2022, Sergeant William Riddle and Officer Nathaniel White of the Gulfport Police Department responded to a report that a man was using a baseball bat to break windows at an apartment. They observed that the apartment's windows and the

windows of a 2014 Hyundai Accent were broken. A shirtless male, later identified as Shaun Lewis, was "sweating profusely" and stating, "[G]et my sister out." Lewis's sister was not at the scene. A witness identified Lewis as the man who had broken the windows of the apartment and the Hyundai. Photographs of the damaged car were admitted into evidence and shown to the jury at trial. White collected a red and black Easton Rampage baseball bat that was also admitted into evidence and shown to the jury.

¶3.     Lewis was indicted for felony malicious mischief. *See* Miss. Code Ann. § 97-17-67(3) (Rev. 2020). The indictment alleged that

> LEWIS . . . willfully, unlawfully, and feloniously did maliciously or mischievously destroy, disfigure or injure the personal property of another, to-wit: one (1) 2014 Hyundai Accent automobile, owned by Dorothy Jones, said destroyed property being a value of One Thousand Dollars ($1,000.00) or more but less than Five Thousand Dollars ($5,000.00) . . . .

¶4.     At trial, Patrice Lumpkin testified that she was visiting her cousin's apartment in Gulfport on September 20.[1] Lumpkin was driving a 2014 Hyundai Accent that her mother-in-law, Dorothy Jones, owned.[2] Lumpkin looked out the window and saw Lewis "standing

---

[1] At a hearing the day before trial, defense counsel made an ore tenus motion in limine to exclude Lumpkin's testimony due to an alleged "late disclosure." The trial court "treat[ed] it as a discovery violation" and ordered the State to make Lumpkin available for an interview by the defense prior to jury selection. After a recess, defense counsel told the court, "[W]e had a chance to speak with [Lumpkin]. . . . [W]e don't feel like there's any sort of preparation issue at this point. We're ready to go forward." Defense counsel reported that Lumpkin said she told Lewis to stop breaking windows, and Lewis responded, "I'll do you, too, if you come out here." Defense counsel argued that Lewis's alleged threat was irrelevant to the charge of malicious mischief and should be excluded under Mississippi Rule of Evidence 403. The State argued that Lewis's use of the word "too" implied an admission that he had broken the car's windows. The trial judge overruled Lewis's in limine objection, finding that the testimony would be relevant and more probative than prejudicial.

[2] Lumpkin clarified that she bought the car from Jones for $1,200, "but at the time

in the driveway with a [baseball] bat." Lewis then broke all the windows of Lumpkin's Hyundai with the bat. Lewis walked over to the apartment and broke the apartment's windows with the bat. Lumpkin was cooking red beans on the stove in the apartment, and Lewis "hit the window with the bat and knocked the pot of beans over." Lumpkin "yelled through the window" for him to "stop beating the car." Lewis told her he would "do . . . the same thing" to her if she came outside. Lumpkin testified that Lewis "broke all the windows" and lights of the vehicle. On cross-examination, Lumpkin testified that she and her husband paid "over $1,000" to have the car fixed. Lumpkin testified that Jones took the car to Jackson to have it repaired and that Jones did not pay for the repairs. However, Lumpkin acknowledged that she "wasn't there" when the repairs were made, so she did not know whether her husband gave Jones the money for the repairs. She testified that her husband and Jones handled the details of the repairs.

¶5.    After Lumpkin testified, defense counsel moved for a mistrial based on an alleged "discovery violation." Counsel argued that "who paid what and to where has always been an issue. . . . [T]he State supplemented discovery and told us . . . that Dorothy Jones paid $3,700 to a Ladarious Johnson" and that Jones's son (Lumpkin's husband) "[s]pent $827 on parts." Counsel argued that Lumpkin's trial testimony was the first time anyone had claimed that Lumpkin paid any repair expenses and that Jones did not "pay for anything." The State responded that "we all just learned that at the same time today in court. No one has told us that, either." The trial court denied the defense's request for a mistrial.

---

it hadn't been transferred over to [Lumpkin,] so legally it was still" Jones's car.

¶6.     Jones then testified that her son gave her $1,000 for the 2014 Hyundai Accent and that he and his wife, Lumpkin, used the car. Jones agreed that in September 2022, she was still the legal owner of the car. Jones testified that the total cost of the repairs for the car was $4,527.69. Jones explained that she paid Johnson $3,700, and her son paid $827.69 for repairs. However, Jones did not know whether her son received any of his contribution from Lumpkin. Jones testified that Johnson gave her a receipt for the repairs, but she did not know what she did with the receipt.

¶7.     After the State rested its case-in-chief, Lewis moved for a directed verdict, arguing that the State failed to prove the element of value and that "testimony alone towards value should not be enough." The trial court overruled the motion, stating that "the owner of the property can testify as to its value."

¶8.     Lewis testified in his own defense. Lewis testified that his grandmother lived next door to Lumpkin's cousin. He said that on September 20, he was visiting his grandmother and his sister. Lewis claimed that suddenly he heard his sister "screaming for help" "from the residence next door." Lewis stated that he asked Lumpkin whether his sister was inside the residence, and Lumpkin said she was not. Lewis testified that he continued to hear his sister screaming, and he wanted to "distract them" so that he could help his sister. Lewis admitted that he "grabbed the bat and . . . bust[ed] out the windows to the car." He said that "was [his] option at that point" to prevent "them" from doing more "damage" or "harm" or "whatever" they were doing to his sister.

¶9.     The jury found Lewis guilty of malicious mischief. The court sentenced him as a

4

habitual offender to serve five years in the custody of the Department of Corrections. Lewis filed a motion for judgment notwithstanding the verdict or a new trial, which was denied, and a notice of appeal.

**ANALYSIS**

¶10. On appeal, Lewis argues (1) that the trial court erred by denying his motion for a mistrial and (2) that the evidence was insufficient to support his conviction.

### I.     Motion for a Mistrial

¶11. Lewis first argues that the trial court should have granted his motion for a mistrial because he suffered unfair surprise from Lumpkin's testimony concerning her payments for repairs to the Hyundai. Lewis asserts that Lumpkin's testimony unfairly surprised him because he was "not aware of any repair payments made by Ms. Lumpkin." Lewis further contends that "the State failed to disclose Lumpkin's payments."

¶12. "A denial of a motion for mistrial is reviewed for abuse of discretion." *Hendrix v. State*, 957 So. 2d 1023, 1029 (¶15) (Miss. Ct. App. 2007). "A trial judge need declare a mistrial only when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case." *Sharkey v. State*, 265 So. 3d 151, 155 (¶14) (Miss. 2019) (quotation marks omitted).

¶13. Mississippi Rule of Criminal Procedure 17.2 states that

> the prosecution must disclose to each defendant . . . the following which is in the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution: (1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together with a copy of the contents of any statement . . . of each such witness and the substance of any oral statement

5

made by any such witness . . . .

In addition, Rule 17.9(b) states:

> If, during the course of trial, the prosecution attempts to introduce evidence
> which has not been timely disclosed to the defense as required . . . and the
> defense objects . . . , the court shall:
>
> > (1)    Grant the defense a reasonable opportunity to interview the
> > newly discovered witness . . . .
> >
> > (2)    If, after such opportunity, the defense claims unfair surprise or
> > undue prejudice and seeks . . . a mistrial, the court shall, in the interest
> > of justice and absent unusual circumstances, exclude the evidence,
> > grant a continuance for a period of time reasonably necessary for the
> > defense . . . , or grant a mistrial.

MRCrP 17.9(b).

¶14.    As noted above (*see supra* note 1), the court granted the defense an opportunity to interview Lumpkin just prior to trial, and defense counsel then reported that they were prepared to examine Lumpkin and "ready to go forward." During cross-examination, Lumpkin revealed—allegedly for the first time—that she and her husband "spent over $1,000 getting [the] car fixed." Following Lumpkin's testimony, Lewis moved for a mistrial. According to defense counsel, the State disclosed in discovery that Jones had paid for the cost of the repairs and that Jones's son (Lumpkin's husband) had paid for parts. Defense counsel argued that Lumpkin's testimony on the stand was the first information he had received that Jones "didn't pay for anything." In response, the State argued that a mistrial was not warranted and that "we all just learned that at the same time today in court. No one has told us that, either . . . . We don't know who all pitched in on it. . . ."

¶15.    As the State points out on appeal, it was not the prosecution that introduced evidence

6

of Lumpkin paying for repair expenses. Instead, it was the defense on cross-examination. Neither the defense nor the State seemed to have any prior knowledge that Lumpkin would testify that she and her husband paid to have the vehicle repaired. Any unfair surprise that resulted from Lumpkin's testimony did not result in substantial and irreparable prejudice to Lewis's case, and it was within the trial court's discretion to deny the motion for mistrial.

## II. Sufficiency of the Evidence

¶16. Lewis also argues that the evidence presented at trial was insufficient to support his conviction. He specifically asserts that "the value element necessary for a felony malicious mischief conviction was not satisfied."

¶17. We review challenges to the sufficiency of the evidence de novo. *Sanford v. State*, 247 So. 3d 1242, 1244 (¶10) (Miss. 2018). "We view the evidence in the light most favorable to the prosecution to determine whether rational, reasonable fair-minded jurors could have found that the State proved each essential element of the crime." *Poole v. State*, 46 So. 3d 290, 293 (¶20) (Miss. 2010) (quotation marks and emphasis omitted). "[A]ll credible evidence supporting a defendant's guilt should be accepted as true, and all favorable inferences drawn from the evidence must be reconciled in the prosecution's favor." *Johnson v. State*, 904 So. 2d 162, 166 (¶7) (Miss. 2005). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements." *Poole*, 46 So. 3d at 293-94 (¶20). "Rather, we must affirm the conviction as long as there is sufficient evidence for a rational juror to find that the State proved all elements of the offense." *Williamson v. State*, 375 So. 3d 1158, 1167 (¶19) (Miss. Ct. App. 2023) (citing

*Poole*, 46 So. 3d at 293-94 (¶20)).

¶18.   "Every person who shall maliciously or mischievously destroy, disfigure, or injure, or cause to be destroyed, disfigured, or injured, any property of another, either real or personal, shall be guilty of malicious mischief." Miss. Code Ann. § 97-17-67(1). "If the value of the property destroyed, disfigured or injured is in excess of One Thousand Dollars ($1,000.00) but less than Five Thousand Dollars ($5,000.00), it shall be a felony punishable by a fine not exceeding Ten Thousand Dollars ($10,000.00) or imprisonment in the Penitentiary not exceeding five (5) years, or both." *Id.* § 97-17-67(3). The "value shall be the cost of repair or replacement of the property damaged or destroyed." *Id.* § 97-17-67(7).

¶19.   Lewis argues that proof of the value element of the crime was not satisfied because of the conflicting testimony of Jones and Lumpkin. However, as set forth above, both Jones and Lumpkin testified that the cost to repair the damaged vehicle was more than $1,000 and less than $5,000. Notwithstanding *who* paid for the damages, the only evidence presented to the jury was that the cost to repair the vehicle was in excess of $1,000 and fewer than $5,000. Moreover, to the extent that Jones's testimony conflicted with Lumpkin's testimony, "[t]he testimony of a single uncorroborated witness is sufficient to sustain a conviction even though there may be more than one person testifying to the contrary." *Williams v. State*, 512 So. 2d 666, 670 (Miss. 1987) (citations omitted). Any conflicts in the testimony were for the jury to resolve.

¶20.   Lewis also argues that the State failed to prove the value of the property damaged because the State did not present "expert testimony to corroborate the conflicting" testimony

of Jones and Lumpkin. Proof of value is an essential element of the crime of malicious mischief, *Thomas v. State*, 48 So. 3d 460, 473 (¶31) (Miss. 2010), but neither this Court nor the Supreme Court has held that expert testimony is necessary. Indeed, a lay witness who paid for the repairs is more than competent to testify regarding "the cost of repair . . . of the property damaged or destroyed." Miss. Code Ann. § 97-17-67(7).[3]

¶21. In the present case, the State presented sufficient, competent evidence for rational jurors to find beyond a reasonable doubt that the value of the damage to the Hyundai was greater than $1,000 and less than $5,000. Therefore, the State presented sufficient evidence to support Lewis's conviction of malicious mischief, and his conviction and sentence are **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**

---

[3] Lewis cites *Shaw v. State*, 139 So. 3d 79 (Miss. Ct. App. 2014), in support of his argument that expert testimony is necessary. However, *Shaw* merely stated that an estimator for a body shop "testified as an expert witness for the State regarding the cost of damage done to [the] car" at issue in that case. *Id.* at 86 (¶22). This Court did *not* hold that expert testimony was *necessary* to prove the cost of repairs.